

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

DEC 15 2008

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

VASHTI WASHINGTON,

        Plaintiff,

v.                           ACTION NO. 2:08cv93

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Vashti Washington ("Washington"), brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference filed May 29, 2008. For the reasons expressed herein, the Court RECOMMENDS that the final decision of the Commissioner be UPHELD and the case be DISMISSED.

## I. PROCEDURAL BACKGROUND

On January 7, 2004, Washington filed an application for DIB, alleging an onset of disability as of March 1, 2002, due to degenerative joint disease, asthma, arthritis, fibromyalgia,

chronic bronchitis, and sleep apnea. (R.[1] 14, 77-78.) Washington's applications were denied by the Social Security Administration initially on April 28, 2004, (R. 38), and upon reconsideration on August 2, 2004. (R. 44.)

On October 7, 2004, Washington requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration. (R. 47-48.) At the hearing on December 21, 2005, Washington appeared and testified. (R. 14, 414.) Washington was represented by an attorney, Anthony J. Johnson, Jr. (R. 14, 30, 414); also present was Ms. Linda Augins ("Augins"), an independent vocational expert. (R. 14.)

On January 11, 2006, the ALJ issued a decision in which she determined that Washington was not entitled to DIB. (R. 21.) Specifically, the ALJ found that the "date last insured" ("DLI") was September 30, 2002. (R. 19.) The ALJ did not make a finding regarding when Washington was last engaged in substantial gainful activity because Washington presented conflicting testimony and evidence at the hearing regarding his amount of income in 2001, 2002, and 2003. (R. 15.) The ALJ found Washington's statements regarding his impairments and their impact on his ability to work to be not credible. (R. 20.) The ALJ further found that medical evidence established that on his DLI, Washington suffered

---

[1] "R." refers to the transcript of the administrative record of proceedings relating to this case.

degenerative disc disease in the lumbar spine, but that impairment did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 19.)  The ALJ found none of Washington's other ailments to be severe as of the DLI.  (R. 20.) Relying on Augins' testimony, the ALJ found that while Washington could not return to his former work as a bail bondsman, Washington had the residual functional capacity for certain jobs that entail light work and exist in significant numbers in the national economy, including working as a ticket counter or surveillance system monitor.   (R. 19-20.)

On March 25, 2006, Washington requested review of the ALJ's decision by the Appeals Council of the Office of Hearings and Administration ("Appeals Council").  (R. 10.)  By Order dated May 14, 2007, the Appeals Council denied Washington's request for review, stating that it found no reason to review or change the ALJ's decision.  (R. 7).  This makes the ALJ's decision the "final decision" of the Commissioner subject to judicial review here, pursuant to 42 U.S.C. § 405(g).  20 C.F.R. §§ 404.981, 416.1481.

Washington requested additional time to file his civil action on July 31, 2007.   (R. 6.)   The Appeals Council granted an extension of thirty (30) days to file a civil action on January 22, 2008.  (R. 4.)  On February 22, 2008, Washington, represented by counsel, timely brought the instant action seeking judicial review of the decision of the Commissioner denying his claim for DIB.  On

3

May 9, 2008, Defendant answered the Complaint. On August 14, 2008, Washington filed his motion for summary judgment with a memorandum in support ("Pl. Mem. Supp."). On October 15, 2008, Defendant filed a motion for summary judgment along with a memorandum in support and in opposition to Washington's motion for summary judgment ("Def. Mem. Opp."). On October 29, Washington filed his reply memorandum in support of his motion for summary judgment ("Pl. Reply"). As neither party in this case has indicated special circumstances requiring oral argument in this matter, the case is deemed submitted for decision based on the memoranda.

## II.  FACTUAL BACKGROUND

Washington was a forty-two (42) year old man at the time of the hearing. (R. 15.) He has a college degree in sociology with a concentration in criminal justice. (R. 420.) Washington's past relevant work experience includes serving in the military for about twelve years (1981-1994), (R. 15, 59, 70), and working as a bail bondsman beginning in 1995. (R. 15, 421.) From 1995 to 1996, and from 1998 to 2001, he worked full time as a bail bondsman. (R. 421-22.) He worked part time as a bail bondsman from 1996 to 1998 and from 2001 to the end of his employment. (R. 15, 421-22.) Washington testified at the hearing before the ALJ that he worked until 2003, (R. 422), but in his Application for Disability Insurance Benefits he claimed he stopped work "altogether" in March 2002. (R. 61.) As part of the job, Washington was required to

4

apprehend individuals and perform surveillance.    (R. 423.)    The
job did not require heaving lifting, but did require occasionally
running and sitting for long periods of time.    (R. 422-23.)

Washington alleges that he became disabled on March 1, 2002.
(R. 78.)

### III. <u>STANDARD FOR SUMMARY JUDGMENT</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary
judgment should be granted only if "there is no genuine issue as to
any material fact and the . . . moving party is entitled to
judgment as a matter of law."    Fed. R. Civ. P. 56(c).    For the
evidence to present a "genuine" issue of material fact, it must be
"such that a reasonable jury could return a verdict for the non-
moving party."    <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
(1986).    Facts are deemed material if they might affect the outcome
of the case.    <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).    In
other words, the moving party's submission must foreclose the
possibility of the existence of facts from which it would be open
to a jury to make inferences favorable to the non-movant.    <u>Id.</u>

In deciding a summary judgment motion, the Court must view the
record as a whole and in the light most favorable to the non-moving
party.    <u>Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.</u>,
763 F.2d 604, 610 (4th Cir. 1985).    "If, however, 'the evidence is
so one-sided that one party must prevail as a matter of law,' we
must affirm the grant of summary judgment in that party's favor."

O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 545 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 251-52).  Moreover, summary judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," Celotex, 477 U.S. at 322, as the non-moving party is required to "set forth specific facts showing that there is a genuine issue for trial" with respect to that element.  Fed. R. Civ. P. 56(e)).

When confronted with cross-motions for summary judgment, "the standards upon which the Court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991).  "[T]he Court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## IV. STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION

The Commissioner held that Washington was not under a disability within the meaning of the Act.  Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).  The Court's review of this decision is

6

limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam); Hays v. Sullivan, 907 F.2d 1453 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter, 993 F.2d at 34 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1453 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence or of the Commissioner's findings. Schweiker, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or on the Commissioner's designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits

will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson v. Perales, 402 U.S. 389, 401 (1971). The issue before this Court, therefore, is not whether Washington is disabled, but whether the Commissioner's finding that Washington is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See id.; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("[A] factual finding by an [ALJ] . . . is not binding if it was reached by means of an improper standard or misapplication of law.")

## V.   ANALYSIS

Washington argues that the case should be remanded because (1) the ALJ found the incorrect DLI and (2) even if the ALJ found the correct DLI, the ALJ incorrectly found Washington not to be disabled prior to the DLI. The Commissioner opposes each of these arguments. The Court will examine the arguments in turn.

### A.   Date Last Insured

There was conflicting evidence presented at the hearing before the ALJ: on the one hand, Washington testified he did not file a tax return in 2002 because he "didn't make enough money . . . to file taxes," (R. 426), yet testified he earned $10,000 in 2002, (R. 427); and on the other hand, his Social Security earnings record showed he made no money in 2002. (R. 15, 64.) The ALJ noted this discrepancy in step one of her analysis, that is, whether

8

Washington was engaged in substantial gainful employment. (R. 15.) Given this discrepancy, the ALJ found September 30, 2002 to be Washington's DLI. (R. 15.) In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589 (citing Hays, 907 F.2d at 1456). The Court will not do so here.

Washington argues that the ALJ found the incorrect DLI, and therefore the case should be remanded for a new determination. Washington argues that the DLI found in the ALJ's decision, September 30, 2002, is incorrect because the Social Security Administration in 2008 changed Washington's earnings record for 2002 to reflect that he earned $3,621.00 instead of $0.00. The Commissioner argues that this "new evidence" may not be introduced to this Court and therefore the case should not be remanded to the ALJ.

Sentence four of 42 U.S.C. § 405(g) expressly limits the scope of the Court's review to the pleadings and the administrative record. The sixth sentence of § 405(g), however, provides for a prejudgment remand, "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990). Under the sixth sentence of § 405(g), the Court

9

may remand a Social Security case and order additional evidence to be taken, but <u>only</u> if: (1) the new evidence is relevant; (2) the evidence is material; (3) there is good cause for the claimant's failure to submit the evidence during the administrative proceeding; and (4) the claimant presents "at least a general showing of the nature of the new evidence." <u>Borders v. Heckler</u>, 777 F. 2d 954, 955 (4th Cir. 1985); <u>Brock v. Sec'y of Health & Human Servs.</u>, 807 F. Supp. 1248, 1250-51, 1250 n.3 (S.D.W. Va. 1992). Evidence is new "if it is not duplicative or cumulative." <u>Wilkins v. Sec'y, Dep't of Health & Human Servs.</u>, 953 F.2d 93, 96 (4th Cir. 1991) (en banc); <u>Rogers v. Barnhart</u>, 204 F. Supp. 2d 885, 892 (W.D.N.C. 2002). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." <u>Wilkins</u>, 953 F.2d at 96; <u>Rogers</u>, 204 F. Supp. 2d at 892 n.1. The new evidence must "relate to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). The evidence must concern whether the claimant was disabled during this relevant period of time. <u>See</u> <u>Wooldridge v. Bowen</u>, 816 F.2d 157, 160 (4th Cir. 1987); <u>Cox v. Heckler</u>, 770 F.2d 411, 413 (4th Cir. 1985); <u>Brock v. Heckler</u>, 612 F. Supp. 1348, 1354 (D.S.C. 1985).

Setting aside whether the new evidence is relevant and material, Washington has not shown good cause for failing to present this additional evidence at the hearing before the ALJ. Washington argues there is good cause because, it appears, (1)

Washington was not represented by counsel at the Appeals Council stage of the proceedings, (2) there was an inconsistency in the administrative file regarding his earnings and Washington sought to rectify that inconsistency, and (3) there was confusion among the parties at the ALJ hearing regarding when Washington stopped working and what were his earnings in 2002.  Pl. Reply 8-9.  Taking the third argument first, indeed there was confusion regarding Washington's earnings in 2002, but that does not show good cause for why Washington did not know how much money he made and what years he worked.  It was incumbent upon Washington to know these facts at the time of the hearing because they were directly relevant to the ALJ's findings regarding disability.  The Court further finds no merit to the argument that because Washington did not have counsel at the Appeals Council stage of the case there is good cause for not providing an accurate Social Security earnings report at the time of the ALJ hearing.  Not only did the ALJ hearing occur <u>before</u> the Appeals Council stage, but Washington was also <u>represented by counsel at the ALJ hearing</u>.  Finally, that Washington sought to rectify the Social Security earnings report long after the ALJ hearing and the Appeals Council's review is no remedy for his failure to rectify that report prior to the ALJ hearing.  Washington provides no reason for why he could not correct any discrepancy in the Social Security earnings report prior to the ALJ hearing.

11

Additionally, the Court notes that it is incumbent upon the individual to provide the Social Security Administration with accurate information regarding one's earnings. Without a showing that Washington provided accurate information to the Social Security Administration and the Social Security Administration then erred in its recordkeeping, it is Washington who bears responsibility in ensuring that accurate information is provided to the ALJ regarding his earnings. In this case, it appears that, at the time of the hearing before the ALJ, Washington was himself unsure of when he last worked and what his earnings for 2002 were. Washington now attempts to introduce a third figure, in addition to $0.00 and $10,000, for his income for 2002: $3,621. Washington maintains this new figure is correct. He has not provided a scintilla of a good explanation, however, for why he could not have come to this "correct" conclusion prior to the hearing before the ALJ.

Accordingly, the Court holds that Washington may not introduce this "new" evidence into the record.

## B. <u>Sequential Disability Analysis</u>

Next, Washington argues that the ALJ's decision that Washington was not disabled prior to September 30, 2002 is not supported by substantial evidence.

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act

as the:

> inability to do any substantial gainful
> activity by reason of any medically
> determinable physical or mental impairment[2]
> which can be expected to result in death or
> which has lasted or can be expected to last
> for a continuous period of not less than 12
> months.

20 C.F.R. §§ 404.1505(a), 416.905(a); <u>see also</u> 42 U.S.C.

§ 423(d)(1)(a). To meet this definition, the claimant must have a

severe impairment that makes it impossible to do previous work or

any other substantial gainful activity[3] that exists in the local or

national economy. 20 C.F.R. §§ 404.1505(a), 416.905(a); <u>see also</u>

42 U.S.C. § 423(d)(2)(A).

In determining whether a particular claimant is disabled, the

Commissioner follows a five-step sequential analysis, which is set

forth at 20 C.F.R. § 404.1520. <u>See</u> <u>Hall v. Harris</u>, 658 F.2d 260,

264-65 (4th Cir. 1981). Under this process, the ALJ must determine

in sequence:

(1) Whether the claimant is engaged in substantial gainful

activity (i.e., whether the claimant is working). If so,

the claimant is <u>not</u> disabled, and the inquiry is halted.

---

[2]A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[3]"Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

(2)    Whether the claimant has a severe impairment.  If not, the claimant is <u>not</u> disabled, and the inquiry is halted.

(3)    Whether the impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria.   If so, the claimant <u>is</u> disabled, and the inquiry is halted.

(4)    Whether the impairment prevents the claimant from performing past relevant work.  If not, the claimant is <u>not</u> disabled, and the inquiry is halted.

(5)    Whether the claimant is able to perform any other work considering both her residual functional capacity[4] and her vocational abilities.   If so, the claimant is <u>not</u> disabled.

## 1. **Step One: Substantial Gainful Activity**

In the instant case, the ALJ deferred a finding on whether Washington was engaged in substantial gainful employment at the time of his DLI, September 30, 2002.  (R. 15.)  The ALJ found there was "insufficient evidence to make a formal determination at this step" because there was conflicting evidence in the record

---

[4]"Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptoms.   <u>See</u> 20 C.F.R. § 404.1545(a)(1).

regarding the extent of Washington's employment and earnings in 2002 and 2003. (R. 15.) The ALJ noted that Washington's "Social Security earnings record shows no wages or self-employment income . . . for 2001 or 2002 and that he reported self-employment income of $3,233 in 2003." (R. 15, 64.) Washington testified, however, that he did not file income taxes for 2001 and 2002 because he was not making enough money to be required to file, but that he earned approximately $10,000 in 2002 and $6,000 in the first three months of 2003. (R. 15, 427.) The ALJ, while not making a formal determination regarding whether Washington was engaged in substantial gainful employment at the time of his DLI, noted that Washington's "alleged earnings in 2002 and his reported earnings in 2003 strongly indicate that he was engaged in substantial gainful employment at the time his disability insured status expired." (R. 15.)

## 2.  **Severity of Impairment**

The ALJ next undertook, at step two, to establish whether Washington suffered from medically determinable impairments, or a combination of impairments, which are considered "severe" under the regulations. (R. 15.) The ALJ found that the objective medical evidence further supported "a finding that prior to September 2002, the claimant had been diagnosed with <u>very mild</u> obstructive sleep apnea, was being seen for symptoms of fibromyalgia that had never been formally diagnosed, and had been found to be suffering

15

bilateral gynecomastia, which was described as a minor abnormality." (R. 17.) The ALJ further found that, although Washington has a history of some medical problems, the objective medical evidence supported a conclusion that the only severe impairment Washington "may have suffered prior to September 2002 [was] the early stages of degenerative disc disease in his lumbar spine, an impairment that causes significant vocationally relevant limitations." (R. 17.) In so doing, the ALJ considered Washington's own testimony regarding his ailments. (R. 17.) The ALJ also considered Washington's medical records from the VA Medical Center (VAMC) at Hampton, Virginia, where Washington received medical treatment. (R. 17.) The ALJ further considered post-September 2002 medical records to help shed light upon Washington's medical condition prior to September 2002. (R. 17.)

The second step of the sequential analysis requires that the claimant have a medically determinable impairment or combination of impairments that is severe and has lasted or is expected to last for a continuous period of twelve (12) months or more. 20 C.F.R. §§ 404.1509 and 404.1520. An impairment cannot be established by the claimant's statement of symptoms alone, but must be demonstrated "by medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. § 404.1508; see also 42 U.S.C. § 423(d)(5)(A). It is the claimant who bears the burden of demonstrating a medically severe impairment or combination of

impairments.   See Bowen v. Yuckert, 482 U.S. 137, 146 (1987)
(citing 42 U.S.C. § 423(d)(5)(A), which provides that a claimant
"shall not be considered to be under a disability unless he
furnishes such medical and other evidence of the existence
thereof . . . .").

An impairment is severe within the meaning of the Social
Security regulations if it imposes significant limitations on the
claimant's ability to perform basic work activities.   20 C.F.R.
§ 404.1521(a).   In contrast, an impairment is not severe if it "has
such a minimal effect on the individual that it would not be
expected to interfere with the individual's ability to work."
Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1982).   Basic work
activities are defined as "the abilities and aptitudes necessary to
do most jobs," which include:

> (1)   Physical functions such as walking, standing,
>       sitting, lifting, pushing, pulling, reaching,
>       carrying, or handling;
>
> (2)   Capacities for seeing, hearing, and speaking;
>
> (3)   Understanding, carrying out, and remembering simple
>       instruction;
>
> (4)   Use of judgment;
>
> (5)   Responding appropriately to supervision, co-workers
>       and usual work situations; and
>
> (6)  Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).  In assessing the functionally limiting effects of a claimant's impairment or combination of impairments, the ALJ must consider any "symptom-related limitations" (restrictions caused by symptoms, such as pain, fatigue, or weakness), provided that the claimant has "a medically determinable impairment(s) that could reasonably be expected to produce the symptoms." Soc. Sec. Ruling 96-3p.  In making this assessment, the ALJ must "consider all symptoms, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929, as well as Social Security Ruling 96-7p."  (R. 20.)   The ALJ must also "consider any medical opinions . . . which reflect judgments about the nature and severity of the impairment and resulting limitations (20 C.F.R. §§ 404.1527 and 416.927, as well as Social Security Rulings 96-2p and 9-6p)."  (R. 20.)  Nonetheless, Social Security Ruling 85-28 provides that an impairment is not severe if it has no more than a minimal effect on the individual's ability to do basic work functions.  (R. 20.)

In his memorandum in support of his motion for summary judgment, Washington does not point to any medical evidence prior to September 30, 2002 in the record that the ALJ either did not properly weigh or failed to consider at all.  See Pl. Mem. Supp. 14-18.  Rather, Washington merely notes that he was treated for

18

sleep apnea, asthma, fibromyalgia, and chronic pain before his DLI and then focuses on medical records subsequent to his DLI. See id.[5]

Even if Washington were to argue that the ALJ's determination regarding the severity of Washington's impairments prior to September 30, 2002 are not supported by substantial evidence, that argument would not succeed. The ALJ evaluated Washington's testimony at the hearing, in which he stated he suffers from chronc bronchitis, asthma, fibromyalgia, depression, and chronic joint pains. (R. 16.) Washington claimed that he can only walk approximately fifty feet before having trouble with breathing and that he can only stand for ten minutes at a time. (R. 16.) The ALJ found that Washington's statements "concerning his impairments and their impact on his ability to work are not credible," (R. 20.); this Court does not undertake to make credibility determinations or to substitute its judgment for that of the

---

[5] The introductory paragraph to Washington's argument neatly captures the tenure of Washington's entire argument on this point:

> Prior to his last date insured Mr. Washington received medical treatment due to his sleep apnea, asthma, fibromyalgia, and chronic pain. On January 29, 2002[,] Mr. Washington was diagnosed with fibromyalgia, chronic asthma, and osteoarthritis of the spine. The medical records subsequent to the date last insured documents that Mr. Washington is disabled due to his medical conditions, especially fibromyalgia and osteoarthritis of the spine.

Id. at 14 (citation to the record omitted) (emphasis added).

Commissioner.  Craig, 76 F.3d at 589 (citing Hays, 907 F.2d at 1456).

The ALJ further evaluated Washington's medical records at the VAMC, where Washington received medical care, both prior to and after September 30, 2002.  (R. 16.)  The ALJ found the following medical evidence prior to September 30, 2002:

> (1) In December 1999, Washington underwent EMG testing for carpal tunnel syndrome; no evidence of carpal tunnel syndrome was found.

> (2) On November 16, 2000, Washington was found to have very mild obstructive sleep apnea after undergoing a sleep study.

> (3) On February 15, 2001 an x-ray found a minor abnormality on Washington's right hand after Washington had a fall in November 2000.

> (4) On January 29, 2002, Washington saw a physician regarding fibromyalgia, recurrent skin infections, and diarrhea.  The examining physician found Washington to be "well and healthy:" his  affect was normal, gait and station were normal, range of motion in the hips and knees was grossly normal, and his EKG was normal.  The physician advised Washington to continue his current lifestyle and medications.

> (5) Also on January 29, 2002, a depression screen was negative.

> (6) On August 8, 2002, Washington complained of pain in his right breast.  On August 12, 2008, a chest echogram found a bilateral gynecomastia, considered to be a minor abnormality.

(R. 16-17.)  The ALJ also took into consideration medical evidence taken after September 30, 2002.  On April 28, 2003, Washington complained of coughing blood off and on for years and three episodes of syncope.  (R. 17.)  The examining physician ordered a

20

series of tests: an EKG showed normal left ventricular diastolic function, chest x-rays found "prominent right first rib articulation but otherwise was normal," an MRI of Washington's lumbar spine "showed mild disc degeneration at L5/S1 with broad disc bulge and bulge protrusion," other testing was normal.   (R. 17.)

The ALJ accordingly found that the only severe condition that Washington "may" have suffered prior to September 30, 2002 was "the early stages of degenerative disc disease in his lumbar," an impairment the ALJ noted causes "significant vocationally relevant limitations."   (R. 17.)   The Court finds this conclusion to be supported by the substantial evidence as outlined above.

### 3.  Steps Three Through Five

The ALJ next determined, in step three, that Washington's possibly severe impairment of his lumbar spine "did not meet or medically equal the criteria of any of the listed impairments described in Appendix 1 of the Regulations (20 C.F.R. Part 404, Subpart P, Appendix 1) as of September 30, 2002."   (R. 17.)

In step four of the analysis, the ALJ found that Washington could not return to his past work.   (R. 18.)   The ALJ relied upon Augin's testimony that Washington's past jobs required medium to heavy exertion.   (R. 18.)   The ALJ found that Washington's residual functional capacity allowed him to perform a limited range of light work.   In so finding, the ALJ noted:

21

> The record supports a conclusion that at [the time of the DLI] Mr. Washington could lift and carry up to twenty pounds occasionally and ten pounds frequently, could stand and walk up to four hours in a workday, could sit for six hours in a workday, and could climb only occasionally. His capacity for light work was diminished by his inability to climb ladders, ropes, and scaffolds. Allowing for his subjective complaints of depression and for some slight to moderate pain, I further find he is limited to simple, one, two, three step tasks and instructions.

(R. 18.)   The ALJ also considered the opinion of the Disability Determination Service physician, as required by Social Security Ruling 96-6p, and found that opinion "generally consistent with the evidence."   (R. 18.)   The ALJ therefore gave it "significant weight."   (R. 18.)

In step five of the analysis, the ALJ found that Washington was a thirty-nine (39) year old individual, which is defined as a "younger individual," with at least a high-school-equivalent education and no transferable skills. (R. 18-19.) According to testimony given by the vocational expert, two jobs exist in the local and national economies for an individual with Washington's impairment, residual functional capacity, age, education, and work experience.   (R. 19.)   These jobs include surveillance system monitor (1,300 locally and 150,000 nationally) and ticket counter (8,000 locally and 1.9 million nationally).   (R. 19.)   Therefore, at step five, Washington was found not to be disabled.   (R. 19.)

22

### 4.   **Washington's Arguments**

As noted above, Washington does not argue that the process by which the ALJ analyzed Washington's claim for DIB was flawed, for example, either by not assigning weight to medical evidence or not evaluating certain evidence in the record.   Rather, Washington argues that the substance of the ALJ's analysis and conclusion - that Washington is not disabled - is flawed and not supported by substantial evidence.   The Court's review of the ALJ's decision, however, is limited to determining whether there is substantial evidence in the administrative record to support the decision.   42 U.S.C. § 405(g); Hunter, 993 F.2d at 34.   The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination.   Richardson, 402 U.S. at 401.   In other words, this Court reviews the ALJ's decision to ensure that the decision is supported by substantial evidence and that the ALJ conducted a proper process in reaching that determination; the Court does not undertake to substitute its judgment for that of the Commissioner.   Craig, 76 F.3d at 589 (4th Cir. 1996) (citing Hays, 907 F.2d at 1456).   Washington does not point to any procedural flaw in the ALJ's decision or decision-making.   The Court finds that the ALJ's decision is supported by substantial evidence, and the Court will not substitute its own judgment for that of the ALJ.

## C.   CONCLUSION

Based on the foregoing, the Court holds that Washington may not introduce "new" evidence regarding his earnings for 2002.   The Court further FINDS that there is substantial evidence in the administrative record to support the ALJ's determination that Washington's DLI was September 30, 2002 and that Washington was not disabled under the Act or entitled to DIB.   The ALJ accorded the proper weights to the various testimony and opinions and provided adequate reasons for doing so, based on the record in its entirety. The ALJ's analysis was based on a correct application of the relevant law, and thus the ALJ properly determined that Washington was not entitled to DIB.

## VI.   RECOMMENDATION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be UPHELD, that Defendant's motion for summary judgment be GRANTED, and that Plaintiff's motion for summary judgment be DENIED. Accordingly, the Court recommends that the case be DISMISSED.

## VII.   REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of

this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof. See Fed. (R. Civ. P. 72(b).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).


United States Magistrate Judge

Norfolk, Virginia
December 15 , 2008

25

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Charlene A. Morring, Esq.
Montagna Klein Camden LLP
425 Monticello Avenue
Norfolk, VA 23510
Counsel for Plaintiff

George M. Kelley, III, Esq.
Assistant United States Attorney
Office of the United States Attorney
World Trade Center
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for Defendant

Fernando Galindo,
Clerk of Court

By: _____
Deputy Clerk

December 15, 2008

26